CITY OF TALLAHASSEE, a Municipal Corporation Organized and Existing Under the Laws of the State of Florida, v. HATTIE L. COLES.

4 So. (2nd) 874

En Banc

Opinion Filed December 5, 1941

*James Messer, Jr.,* for Plaintiff in Error;
*Oven & Oven,* for Defendant in Error.

THOMAS, J.—Hattie L. Coles sued the City of Tallahassee to recover for painful injuries alleged to have been suffered by her when she stumbled and fell, because of a defect in the street, as she alighted from an automobile and attempted to walk to a house near by. She alleged in her declaration that she was, at the time, "exercising due care and caution for her own safety" and that the unsafe and dangerous condition of the street was known or should have been

known to the defendant "for many weeks prior to, up to and including the 5th day of September, A. D. 1940," the date of the accident.

Issue was formed by pleas of not guilty and contributory negligence.

Giving a version differing somewhat from the averments of her pleading the plaintiff, herself, testified that she parked in the street, made a call and upon returning to the car tripped and was injured. The street was variously described by the plaintiff's witnesses as being "washboardy" with ridges running crosswise; as being creased with ruts running lengthwise; as having depressions the size of "wash basins," and as having on its surface a few stones about the size of "hen eggs," but it is clear that the accident was caused by the plaintiff stepping "on a rut" for this is her positive testimony and no one was present to see her fall.

The city engineer testified that memoranda were kept of the occasions when the dirt streets in Tallahassee were scraped and graded and his record was introduced to show that on the 14th, 19th and 27th of August, immediately preceding the accident, the street where the plaintiff was injured had received this treatment and that such streets were always "scraped to refusal," that is, until it was impossible to "get . . . any more level or better ground." The operator of the road machine which was used for the purpose recalled grading and scraping the street in question on these three separate days before the accident and stated that he had not noticed any deep ruts or anything unusual about its condition. This testimony of the City was not rebutted.

We wrote in a recent opinion, not yet reported (City

of St. Petersburg v. Roach), referring to MacQuillan Municipal Corporations, Sec. Ed. Vol. 7, p. 163, as authority for the statement, that one could not prevail in a suit of this nature without showing that the imperfection had been in existence a sufficient length of time for the city "to have discovered it by the exercise of reasonable care and to have repaired it." The plaintiff in the instant case was evidently conscious of this burden when she alleged in her declaration that "although the defendant knew or should have known" of the dangerous condition of the street yet it permitted the said street to be and remain out of repair . . . on the 5th day of September, A.D. 1940 [when the accident occurred] as said street had been for many weeks prior to said date." There was not only a dearth of testimony to establish negligence on the part of the City in allowing the street to remain unsafe after its defective condition became known or in failing to make repairs when the defect had existed so long that it should have been discovered but, on the contrary, the undisputed testimony of the defendant was that on three separate occasions within four weeks of the accident, the last time but nine days before, the dirt street had been scraped and graded to the point of "refusal."

As long ago as in 1892 this Court held the negligence was the basis for recovery of damages springing from accidents of this character and that it was indispensable to the plaintiff's success that the corporation had notice of the defect which resulted in injury or of facts from which that notice might have been reasonably inferred (Dillon on Municipal Corporations, Vol. 2, Sec. 1024). City of Orlando v. Heard, 29 Fla. 581, 11 So. 182.

While it is true that a definite responsibility is placed upon a municipality to keep streets, that is, the space between the property lines, reasonably safe for use by the public, we think that in determining the propriety of the discharge of that duty the court must consider the use intended for particular parts of those streets, thus, a municipality should only be required to keep a specified portion of the street in a condition reasonably safe for the kind of traffic intended for it. It seems to us that sidewalks and crosswalks devoted to the use of pedestrians would require greater care and attention than the remainder of the street given over to the passage of vehicles. Oliver v. City of Raleigh, 212 N.C. 465, 193 S.E. 853; City of Superior v. Olt, 239 Fed. 100, 152 C.C.A. 150. This becomes especially significant in the instant case because it is undisputed that the plaintiff in the court below was injured as she walked in the portion of the street designed for vehicular traffic. Dirt streets may become hard or soft, according to the weather, and that they will erode by wind or rain is patent. A decision that the cities should be responsible for damages to pedestrians from falling because of ruts cut by vehicles in areas devoted to vehicular traffic would place upon them an intolerable burden.

This leads us to the discussion of the other element which seems necessary to a determination of this controversy, namely, the one whether sanction by this Court of the judgment entered by the trial court would would amount to making the city an insurer. Further quoting from McQuillan Municipal Corporations, *supra*, at page 164: "to keep all the sidewalks in perfect condition at all times is practically a municipal impossibility. For instance, slight inequalities are

nearly always found at one place or another, especially where there is much travel." It would place an insuperable burden upon municipalities to hold that all sidewalks should ;be maintained in a state of perfection much less to fasten upon them the responsibility of keeping all that part of the street used for conveyances in such condition that they could be used by pedestrians with equal safety. This is particularly important when we consider that streets, composed as the one here described, may be so furrowed by automobiles, wagons and the like as to become dangerous to the foot traveler.

To extend the doctrine which we have recognized to that end would unquestionably make of each municipality an insurer. We are committed to the rule that cities are not insurers of those who use the streets. City of St. Petersburg v. Roach, *supra*.

The evidence did not establish negligence on the part of the City in failing to repair a defect of which it had notice or which had existed so long that it should have become known to the City and it was not proven that the alleged imperfection was one for which the City should, in the circumstances, be held accountable situated as it was in that part of the street intended and used for automobiles and other conveyances.

Reversed.

BROWN, C. J., TERRELL, BUFORD and ADAMS, J. J., concur.

WHITFIELD and CHAPMAN, J. J., dissent.