71 So.2d 500 (1954)
NIGHT RACING ASS'N, Inc.
v.
GREEN.
Supreme Court of Florida. En Banc.
March 19, 1954.
Rehearing Denied April 19, 1954.
*501 George J. Baya, Miami, for appellant.
J.F. Gordon & Joseph Pardo, Miami, for appellee.
MATHEWS, Justice.
This appeal results from a personal injury suit brought by appellee against appellant and others for damages growing out of a fall into a pit. The suit was originally brought against the appellant (Night Racing Association, Inc.), the City of Opa Locka, a municipal corporation, and the Optimist Club of Opa Locka. The appellee alleged that he was injured by falling into a dangerous pit located in a parking area on property allegedly controlled by the defendants. He alleged that the defendants are liable to him because of their failure to provide safe covers for the pits.
The Court denied motion to dismiss and the defendants then filed defenses of general issue and, among other things, contributory negligence. The case went to trial upon the pleadings as framed.
In view of the conclusion which we have reached it will be unnecessary to discuss any question except that of contributory negligence.
The defendants were interested in a tract of land included in the Miami Naval Air Station, rectangular in shape, being 700 feet east and west by 1,250 feet north and south, containing approximately 20 acres. An automobile race course known as Opa Locka Speedway was maintained on this tract of land with entrances on Fisherman Street and toward what is known as Douglas Road. There was a parking lot between the speedway and Douglas Road. There was a public parking lot south of Fisherman Street across from the speedway at which a charge was made for parking. There was a railroad spur track which crossed Fisherman Street a short distance west of the speedway and a public parking lot was located west of the railroad track. Between a wooden fence of the speedway and the railroad track a dirt road ran north from Fisherman Street and in this area cars were in the habit of parking, placed either in toward the wooden fence or toward the railroad track. Between 50 and 60 feet north of Fisherman Street and about 20 feet from the fence there was located in the unpaved area a "valve pit", which was one of about 45 or 50 such pits located on the Naval Air Station property. This pit was about 6 feet square and about 6 feet deep, with a large valve in the bottom. A concrete wall forming the side of the pit extended about 10 inches above ground level.
On November 1, 1950, appellee and his wife arrived at the speedway. His wife paid admission and went into the grandstand, while the appellee went into what is known as the "mechanics' pit", where cars were being made ready for the races. The appellee and one Thompson owned a car and it was found that some supplies were needed before the racing. Appellee and two companions left the speedway and drove in appellee's car to a service station a short distance away and obtained supplies. When they returned to the speedway, appellee's former parking place was taken. At the suggestion of his two companions, appellee testified, he turned the car north into the dirt road above described. It is not shown that these two companions were connected in any way with appellant or that they had any authority, direct or implied, to suggest to the appellee where he should turn or where he should park. He *502 received advice from his two companions and them alone as to where he should turn. He found an available parking space and turned the car in toward the speedway fence. His two companions went ahead with the supplies to the waiting Thompson while appellee was busy locking his car. It was then about 8:00 o'clock P.M. and was quite dark. There were no lights in the particular area and the lights on the speedway were blocked by a board fence. After having locked his car the appellee turned south toward Fisherman Street to follow his companions. He was walking along the east side of the dirt road at a "fast walk". The next thing he knew he lay in the valve pit suffering from a badly hurt knee and calling for help.
At the conclusion of the testimony on behalf of the appellee, the defendants moved for a directed verdict which was granted as to all defendants except the appellant. The motion was renewed at the conclusion of all testimony and was again denied. The jury found a verdict for the appellee and the appellant moved for a new trial, for judgment upon his motion for directed verdict and for arrest of judgment, all of which were denied, and the judgment was entered for the appellee in accordance with the verdict.
The record shows according to the appellee's own evidence that the dirt parking area was so dark that the valve pit could not be seen and this was the first time he had ever been in that area. He proceeded at a fast walk to catch up with his companions. No one directed the appellee to enter the dirt area above described to park except his two companions. His companions made the suggestion to him and told him it was sometimes used by other drivers because it was handy to their entrance to the race course. He testified that he had never been in the area before although he had attended races a number of times in the daytime and at night. The road over which he traveled was a dirt road at the end of the pavement and the area where he parked his car was oft from this dirt road and there is no evidence from anyone that it was maintained by the defendant for a parking area.
Although the question of contributory negligence is a question for the jury where there is a genuine issue as to any material fact, in this case there is no genuine issue as to any material fact and there was nothing to submit to the jury. There was no conflict in the testimony to justify a submission of the question of contributory negligence to the jury. Norman v. Shulman, 150 Fla. 142, 7 So.2d 98; Westerbeke v. Reynolds, 155 Fla. 2, 19 So.2d 413; Matson v. Tip Top Grocery Co., Inc., 151 Fla. 247, 9 So.2d 366; Tutwiler v. I. Beverally Nalle, Inc., 152 Fla. 479, 12 So.2d 163; Miller v. Shull, Fla., 48 So.2d 521; MacMillan v. Insurance Exchange Bldg., Fla., 58 So.2d 163; Bowles v. Elkes Pontiac Co., Fla., 63 So.2d 769.
In the case of Earley v. Morrison Cafeteria Co. of Orlando, Fla., 61 So.2d 477, 478, in an opinion by Mr. Justice Roberts, this Court said:
"While the rule is well settled that a business invitee is entitled to expect that the proprietor will take reasonable care to discover the actual condition of the premises and either make them safe or warn him of dangerous conditions, it is equally well settled that the proprietor has a right to assume that the invitee will perceive that which would be obvious to him upon the ordinary use of his own senses. Miller v. Shull, Fla., 48 So.2d 521. `The law does not require a proprietor of a public place to maintain his premises in such condition that an accident could not possibly happen to a customer. Plaintiff was in turn obligated to exercise a reasonable degree of care for her own safety. * * * The duty which the plaintiff owes to herself is to observe the obvious and apparent condition of the premises.' Matson v. Tip Top Grocery Co., 151 Fla. 247, 9 So.2d 366, 368.

*503 "* * * If the mat was dangerous at all (which we do not decide), the danger was not latent or concealed, but patent and obvious, and the ordinary use of her senses by the appellant would have disclosed it to her."
In the case at bar we have a man in possession of all of his faculties, parking off from a dirt road in an area he had never been in before, and after so parking, walking at a fast rate of speed over unfamiliar territory in "pitch darkness" in order to catch up with his companions, and who fell into a pit or hole and was hurt. It is very clear that he failed to use any care or caution for his own safety or protection and that his injuries are the result of his own negligence.
Not every injury from an accident gives to the injured party a cause of action for the negligence of someone else. The owner of property is not an insurer of the safety of everyone who comes upon the property under all circumstances. The owner of the property or the one having control of the property was not required to maintain it in such a condition that an accident could not possibly happen. Any person going upon such property, under the undisputed facts and circumstances disclosed by this record, was obligated to exercise a reasonable degree of care for his own safety.
The motion of the appellant for a directed verdict should have been granted.
Reversed for further proceedings in accordance with this opinion.
ROBERTS, C.J., and SEBRING and DREW, JJ., concur.
TERRELL, J., agrees to conclusion of reversal on ground that it is not clear that defendant was in control of land on which hole was located.
THOMAS and HOBSON, JJ., dissent.