142 So.2d 115 (1962)
Minerva GOLDSTEIN and Her Husband, Benjamin Goldstein, Appellants,
v.
GREAT ATLANTIC & PACIFIC TEA COMPANY, a Florida Corporation, d/b/a a & P Super Markets; Isador Rudo, Mary Rudo, Max Rudo, and Ida Rudo, Appellees.
No. 61-312.
District Court of Appeal of Florida. Third District.
June 12, 1962.
Rehearing Denied June 28, 1962.
Richard E. Thomas and Sam Bloom, Miami, for appellants.
Dean, Adams, Fischer & Gautier, for appellees Great Atlantic & Pacific Tea Co., a/b/a A & P Super Markets.
Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell, Miami, for appellees, Isador, Mary, Max and Ida Rudo.
Before PEARSON, TILLMAN, C.J., and HORTON and HENDRY, JJ.
PEARSON, TILLMAN, Chief Judge.
Minerva Goldstein was a business invitee on the parking lot of a supermarket and was injured when she allegedly fell over a broken concrete car stop. The Great Atlantic & Pacific Tea Company operated the supermarket and the lot. Isadore, Max, Mary and Ida Rudo were the owners of the real *116 property and had leased it to A & P. The lease contained a covenant to repair on the part of the lessors.
Mrs. Goldstein, joined by her husband, sued A & P and the Rudos. Each defendant denied liability and alleged contributory negligence of the plaintiff Minerva Goldstein. At the close of the plaintiff's case each defendant moved for a directed verdict, and the court announced its intention to grant both motions. Plaintiff thereupon took an involuntary nonsuit. Judgment was entered and this appeal followed.[1] We affirm as to defendants-appellees, the Rudos, and reverse as to defendant-appellee, A & P
The appellants failed to prove a prima facie case against the Rudos. As the owners of the land, they had no connection with Mrs. Goldstein's injury unless the law should create a liability because of their agreement to keep the premises in repair. The lease agreement was introduced into evidence by the plaintiffs and material portions are as follows:
"Lessor shall make all replacements and any and all other repairs to the demised premises and comply with all such rules, regulations and requirements; and the Lessor assumes liability for all damage and/or injuries resulting from his breach of this covenant and shall indemnify and save harmless the lessee against any and all claims, demands, actions, causes of action, loss or expense brought about by personal injury or property damage to the Lessee, Lessee's customers, or others, or for any damage to the Lessee's merchandise or equipment, arising out of Lessor's failure to make such repairs or replacement."
Appellants urge that Florida has held that a landlord may be liable to an injured business invitee where the landlord has covenanted to keep the premises in repair, and cites Simms v. Kennedy, 74 Fla. 411, 76 So. 739, L.R.A. 1918C, 297, for this proposition. We do not think the statement contained in the cited case was intended to lay down the categorical rule that a landlord is liable for an injury arising out of every defect in the leased premises simply because he has covenanted to keep the premises in repair.
The Florida courts have held that liability may arise when the landlord has undertaken to keep the premises in repair and the landlord either has actual or constructive notice of the defect. Butler v. Maney, 146 Fla. 33, 200 So. 226. Wiley v. Dow, Fla. App. 1958, 107 So.2d 166. Prosser, Torts § 80, at 475 (2d Ed. 1955). See Moore v. O'Connor, Fla.App. 1958, 106 So.2d 606. The requirement of notice to the landlord is essential in the instant case.
Plaintiff has failed to prove either notice to the landlord or circumstances out of which notice might be implied. There was evidence that the break in the car stop was weathered and discolored, but in the absence of a showing that this could not have occurred unless the dangerous condition had existed over a period of time, notice cannot be implied therefrom. The testimony of one of the employees of the store was that he had seen the broken car stop on his first day on the job, but that was only two days before the accident. The store manager had never seen the protruding steel rod which constituted the condition alleged. Therefore, in the absence of notice to the landlord or a request to repair, the trial judge was correct in his announced intention to direct a verdict for the defendants-landlords.
We turn now to the question of whether the evidence viewed in the light most favorable to the plaintiffs-appellants would have supported a jury verdict against the defendant, A & P. Without attempting an exhaustive statement of the testimony, we think the following statements are an outline of the more important facts involved *117 upon which the jury was entitled to deliberate.
Minerva Goldstein had been a shopper in the A & P store. After completing her shopping, she followed the boy who was wheeling a shopping cart containing her groceries toward the car into which her groceries were to be placed. The vehicle in which plaintiff was a passenger had been backed into a parking place with the trunk extending toward an adjoining sidewalk. The boy placed the shopping cart near the right rear wheel of the car and unloaded it into the trunk. Plaintiff stood on the sidewalk and watched the transfer of the groceries from shopping cart to car trunk. After the boy completed the transfer and plaintiff had tipped him, she started toward the door of the car, and according to her testimony tripped over a metal reinforcing rod which protruded from the concrete car stop. The rod protruded at a height of 3 to 6 inches above the ground; and while the accident occurred in bright daylight, the pavement was of a dark color as was the weathered metal rod.
The appellee suggests that the plaintiff may not have tripped over the broken car stop at all, and this may be what a jury would ultimately determine. Under the testimony, however, this conclusion is not the only reasonable one. Therefore, a jury and not the court should make this determination. Welborn v. Kemp, 141 Fla. 89, 192 So. 469.
For the same reason, we must reject appellee's contention that the plaintiff's contributory negligence appears as a matter of law. Whether the danger of the protruding rod was an obvious one is a conclusion that must be made by weighing several factors, including whether it was in effect camouflaged by its dark color. Where different but reasonable conclusions may be drawn from the facts, and one conclusion would not bar plaintiff's recovery, the issue is for the jury. Night Racing Ass'n v. Green, Fla. 1954, 71 So.2d 500. Voelker v. Combined Ins. Co. of America, Fla. 1954, 73 So.2d 403.
We think that the broken car stop in the instant case cannot be said to be as obvious as the grating covering a drain in Becksted v. Riverside Bank of Miami, Fla. 1956, 85 So.2d 130; or the telephone pole across a sidewalk in Jacobs v. Claughton, Fla.App. 1957, 97 So.2d 53. Both appellants and appellees have cited numerous instances as supporting their respective positions in which the obviousness of obstructions or defects was in issue. Very little can be gained from such comparisons because of the numerous evidentiary factors contributing to each decision. Courts can only apply the general principles, and in case of doubt follow the rule that contributory negligence is ordinarily a question for the jury. Turner v. Modern Beauty Supply Co., 152 Fla. 3, 10 So.2d 488.
Appellants present two other points. The first goes to a ruling upon the request of the plaintiffs to call an assistant manager of the grocery store as an adverse witness under Rule 1.37, 1954 Florida Rules of Civil Procedure, 30 F.S.A. The request was properly denied under the rule stated in Seaboard Air Line Railroad Company v. Ford, Fla. 1955, 92 So.2d 160.
Appellant's last point is directed to the assessment of costs. Because the case must be remanded and tried, the costs assessed in favor of A & P will naturally abide the result of the trial. Nevertheless, in order to eliminate, if possible, further appellate proceedings we point out that had this appeal resulted in an affirmance of both of the directed verdicts, we would have affirmed the assessment of all costs. The Supreme Court of this State long ago ruled that a plaintiff could not discontinue a cause without first paying costs. Buffington v. Quackenboss, 5 Fla. 196. In this case, appellant assigns as error the taxation of costs for witness fees where witnesses were not called at trial; depositions not used at trial; photographs not introduced *118 into evidence, etc. If such an argument were held to have merit under the circumstances of the present case, we would have an appellant who as plaintiff prevented defendant-appellee from presenting his case, while precluding the recovery of the costs involved in the preparation thereof. Where a defendant is brought into court and put to the expense of preparing for trial, and where by taking a nonsuit plaintiff denies him the chance of a determination in his favor, the defendant should be compensated for his expenses; or else he shall have been forced to expend funds for nothing. The trial judge in awarding the costs in question did not abuse his discretion. See Spencer v. Florida-Georgia Tractor Co., Fla. App. 1959, 114 So.2d 466.
The judgment for the defendants Isadore, Max, Mary and Ida Rudo is affirmed. The judgment for the defendant Great Atlantic & Pacific Tea Co. is reversed. The cost judgment for the Rudos is affirmed and reversed as to A & P.
Affirmed in part and reversed in part and remanded.
NOTES
[1] Section 59.05, Fla. Stat., F.S.A.