660 So.2d 273 (1995)
Johnnie GRIER, Appellant,
v.
METROPOLITAN DADE COUNTY, Appellee.
No. 93-324.
District Court of Appeal of Florida, Third District.
March 8, 1995.
Rehearing Denied September 20, 1995.
Kutner, Rubinoff, Thompson & Bush and Susan S. Lerner, Richard M. Kirschner, P.A., and Jack B. Woodard, Miami, for appellant.
Robert Ginsburg, County Atty., and Robert G. Davies and Douglas W. Rice, Asst. County Attys., for appellee.
Before SCHWARTZ, C.J., and HUBBART and COPE, JJ.
COPE, Judge.
The plaintiff, Johnnie Grier, appeals from an adverse summary judgment on her claim for negligence. We affirm.
Plaintiff walked diagonally across a paved intersection on her way to a McDonald's Restaurant. After taking several steps, her shoe caught on a surveyor's nail which protruded about one-fourth of an inch above the street surface. Plaintiff fell and suffered injuries.
The plaintiff instituted a lawsuit against Metropolitan Dade County for failing to maintain the roadway in a reasonably safe condition for pedestrian travel. Plaintiff also sued two other defendants, alleging that they had negligently installed the surveyor's nail. The trial court granted summary judgment *274 to Dade County, and the plaintiff has appealed.[1]
A surveyor's nail is a nail which is hammered into the pavement to serve as a permanent survey reference point. When properly installed, the nail should be flush with the surface of the road and should not protrude. This prevents the nail from becoming dislodged and losing its utility as a reference point. For present purposes it is assumed that the surveyor's nail was negligently installed, allowing the head of the nail to protrude one-fourth of an inch above the pavement.
It is undisputed that Dade County did not place the surveyor's nail in the roadway. This particular intersection is close to Interstate 95. Investigation disclosed that the surveyor's nail was placed in the street in 1988 by the Florida Department of Transportation ("DOT"), or E.N. Bechamps and Associates, Inc., a corporation under contract with DOT, for purposes of construction activity on Interstate 95.[2] DOT is not required to obtain any permit from Dade County or notify the County of work it performs on state roads.[3] Therefore, the County was never notified of the nail's placement nor was it required to conduct any sort of inspection following the installation of the nail.
Dade County moved for summary judgment on the basis that it owed no duty to plaintiff to maintain that portion of the roadway where she fell safe for pedestrian travel because such portion of the roadway was intended for vehicular traffic only. The County further argued at the summary judgment hearing that it was entitled to summary judgment because it had no notice that any sort of defect existed in the roadway prior to plaintiff's fall. The plaintiff asserted that the County had a duty to maintain that portion of the roadway where she fell safe for pedestrian crossing because it was reasonably foreseeable that persons would cross that portion of the street in order to reach the McDonald's or a nearby Winn Dixie supermarket. The trial court granted the County's motion.
The County admits in its answer that it is responsible for the maintenance of county streets including the area of the roadway where plaintiff fell. The County argues, however, that its duty extends only to maintenance of its streets in a reasonably safe condition for vehicular traffic. The County argues such duty does not extend to pedestrians who cross the street at places other than specified crosswalks. The County's reliance on City of Tallahassee v. Coles, 148 Fla. 606, 4 So.2d 874 (1941), for such proposition is misplaced. Coles does not relieve a county of its duty and obligations to pedestrians in such cases. It simply suggests that a lower degree of care is required where a pedestrian is injured while crossing a street other than at a designated crosswalk.
[A] municipality should only be required to keep a specified portion of the street in a condition reasonably safe for the kind of traffic intended for it. It seems to us that sidewalks and crosswalks devoted to the use of pedestrians would require greater care and attention than the remainder of the street given over to the passage of vehicles.
148 Fla. at 610, 4 So.2d at 876; see also Ayers v. City of Miami, 578 So.2d 302, 303 (Fla. 3d DCA) (fact that plaintiff was injured in portion of street outside the crosswalk or intersection did not relieve city of its duty to pedestrians to exercise reasonable care), review denied, 591 So.2d 180, 183 (Fla. 1991); cf. 19 Eugene McQuillin, Municipal Corporations, § 54.35.60 (3d ed. 1994) ("[A] city is generally held to a stricter degree of care in respect to sidewalks than ordinary streets.") (citing Coles). However, "[i]n the absence of regulations to the contrary or obvious defects a pedestrian is entitled to use every part of the street, and is entitled to assume that every part of the street is reasonably safe for crossing. In such use, only ordinary care is required." McQuillin, supra, at § 54.129 *275 (footnote omitted); see also Mullis v. City of Miami, 60 So.2d 174, 176 (Fla. 1952); City of Miami v. Lawson, 104 So.2d 600, 601 (Fla. 3d DCA 1958). The plaintiff here was entitled to assume that the street was reasonably safe for her to cross.
Notwithstanding the County's overall duty to plaintiff, we find that there is no liability under the circumstances of this case. In order to establish a prima facie claim for negligence, a plaintiff must show that defendant had either actual or constructive notice of the alleged negligent condition.
[T]o render a municipality liable for injuries for failure to exercise ordinary care to keep its public ways in a reasonably safe condition, it must appear that it knew, or had reasonable cause to know, of the defective condition a sufficient length of time prior to the accident to enable it to put the way in a state of repair.
McQuillin, supra, at § 54.102; see Mullis v. City of Miami, 60 So.2d at 176; City of Jacksonville v. Foster, 41 So.2d 548, 549 (Fla. 1949); City of Miami Beach v. Quinn, 149 Fla. 326, 327, 5 So.2d 593, 593 (Fla. 1942) (A municipality "is required to exercise reasonable diligence in repairing defects after the unsafe condition of the street ... is known or ought to have been known to the officers thereof having authority to act"); Zuniga v. Metropolitan Dade County, 504 So.2d 491, 492 (Fla. 3d DCA 1987).
The record is clear that the County had no actual notice that the nail was in the roadway prior to plaintiff's fall. It is undisputed that the County did not place the surveyor's nail in the roadway. The County was not involved in the construction project for which the nail was placed nor was it obligated to conduct any inspection subsequent to the survey work performed for the DOT. The County first became aware of the nail's presence after plaintiff's fall.
The plaintiff argues that even though the County had no actual notice of the nail's placement in the roadway, the County was nonetheless placed on constructive notice because the nail was positioned in the street in March, 1988, approximately two years preceding the plaintiff's fall. The plaintiff alleges that because the County has a duty to maintain county streets it should have been aware that the defect existed.
Factors bearing on the question of notice include "size and location of the defect with respect to the surrounding area and lighting conditions and whether it has been the cause of other accidents; ... also such matters as the visibility of the condition, the frequency of travel in the area and the probability, if any, that a reasonable inspection by the appropriate public officials would have discovered its existence and its dangerous character." Antenor v. City of Los Angeles, 174 Cal. App.3d 477, 220 Cal. Rptr. 181, 184 (1985) (citation omitted; emphasis added); see Mullis, 60 So.2d at 176; Foster, 41 So.2d at 549; Zuniga, 504 So.2d at 492. While the County is responsible for damages resulting from a defect which has been in existence for so long that a reasonable inspection would reveal it, the County is entitled to summary judgment where it has no actual or constructive notice of the defect. See Zuniga, 504 So.2d at 492.
In the instant case, the defect is the solitary head of a nail, located in the middle of Northwest 62 Street, which protruded one-fourth of one inch above the pavement surface. This is the proverbial needle in the haystack. Carlos Muller, a Traffic Engineer for Dade County Public Works Department, testified at his deposition that the nail "was very unnoticeable... . There is no way [any person] could have spotted [it] by driving along. It requires a very intentional and purposeful act of taking a close look at it. It was a minuscule defect." Plaintiff's counsel himself referred to the surveyor's nail at the summary judgment hearing as a "minuscule spike in the roadway." The surveyor's nail is simply too small to confer constructive notice on the County. It would be unreasonable to expect the County to inspect hundreds, if not thousands, of miles of streets for one-quarter inch defects. To hold otherwise would render the County an insurer. "We are committed to the rule that cities are not insurers of those who use the streets." City of Tallahassee v. Coles, 148 Fla. at 611, 4 So.2d at 876.
*276 Affirmed.[4]
HUBBART, J., concurs.
SCHWARTZ, Chief Judge (dissenting).
In my judgment, the issue of whether the county should have discovered and corrected the admitted defect which caused Ms. Grier's accident during the over two years of its existence was one which only a jury could determine.
Until today, the law in Florida was, as expressed in a case cited by the court:
While a city is not an insurer of the motorist or the pedestrian who travels its streets and sidewalks, City of St. Petersburg v. Roach, 148 Fla. 316, 4 So.2d 367 [1941], it is responsible, of course, for damages resulting from defects which have been in existence so long that they could have been discovered by the exercise of reasonable care, and repaired.
City of Jacksonville v. Foster, 41 So.2d 548, 549 (Fla. 1949) [e.s.]. The majority's conclusion that this is not true here departs not only from that doctrine, but from the general rule that it is ordinarily for the jury to determine the precautions necessary to discharge any duty of reasonable care, Marks v. Delcastillo, 386 So.2d 1259, 1263 n. 8 (Fla. 3d DCA 1980), review denied, 397 So.2d 778 (Fla. 1981); Holley v. Mt. Zion Terrace Apartments, Inc., 382 So.2d 98, 100 (Fla. 3d DCA 1980); Acme Elec., Inc. v. Travis, 218 So.2d 788 (Fla. 1st DCA 1969), cert. denied, 225 So.2d 917 (Fla. 1969); Russell v. Jacksonville Gas Corp., 117 So.2d 29 (Fla. 1st DCA 1960), and from the countless decisions which apply that doctrine to the particular obligation owed by a governmental body to those who use its streets and sidewalks. Kopf v. City of Miami Beach, 653 So.2d 1046 (Fla. 3d DCA 1995),[1] and cases cited.
It is significant that we have been cited to no decision which holds, as does the majority, that a dangerous condition in existence for anything like this two-year period was undiscoverable as a matter of law. See Ress v. Xtra Super Food Centers, Inc., 616 So.2d 110 (Fla. 4th DCA 1993) (presence of sauerkraut on supermarket floor for five minutes or more raises issue of constructive notice); Winn Dixie Stores, Inc. v. Benton, 576 So.2d 359 (Fla. 4th DCA 1991) (milk on aisle floor between fifteen and thirty minutes; same), review denied, 589 So.2d 294 (Fla. 1991). Surely none of the ones it relies upon stands for any such proposition. Antenor v. City of Los Angeles, 174 Cal. App.3d 477, 483-85, 220 Cal. Rptr. 181, 184-86 (1985), holds that there was no "defect" at all, that is, nothing unusually *277 dangerous about the character of a particular intersection which required additional safeguards, by way of signs or lights, to protect a pedestrian from being struck by oncoming traffic. Zuniga v. Metropolitan Dade County, 504 So.2d 491, 492 (Fla. 3d DCA 1987), finds no evidence that a defect in a traffic device had existed for any length of time so as to give the county notice of its existence. Both Foster and Mullis v. City of Miami, 60 So.2d 174 (Fla. 1952), squarely hold that issues of notice and reasonable care were for the jury to determine. See Foster, 41 So.2d at 549 (city liable for inspection of diseased oak tree in parkway; "In all the circumstances developed in the testimony we think the jury was clearly justified in the conclusion that by the exercise of reasonable care the defect could have been found, the danger obviated, and the damage prevented."); Mullis, 60 So.2d at 175 (jury question as to city liability when plaintiff "stepped into a hole caused by an uncovered monument marker in the middle of a public street in the City of Miami, Florida"). Finally, City of Tallahassee v. Coles, 148 Fla. 606, 611, 4 So.2d 874, 876 (1941), finds nothing defective about a dirt street which has become rutted or "so furrowed by automobiles, wagons and the like as to become dangerous to the foot traveler."[2]
Even though actual notice was not in question in that case, Handel v. Rudnick, 78 So.2d 709, 710 (Fla. 1955), is otherwise closely in point. There, the Supreme Court rejected the contention that a carpet button on a hotel step which "protruded as much as the thickness of a silver dollar" was too small to be actionable. The court said:
Defendant makes much ado about the smallness of the button but this may have been the very factor that made it dangerous. If it had been as big as a chair or other furniture it might have put a guest on notice. Guests are entitled to assume that steps and passageways are clear and devoid of dangerous impediments. The contention that smallness is not dangerous as a matter of law has been repeatedly rejected. [citing nine cases] The doctrine of these cases holds that it was a question for the jury.
Likewise the courts have subscribed to the general rule that where the circumstances are such that fair-minded men may differ as to what answer should be given to a charge of negligence, a jury question is presented. Could the danger alleged here have been removed by drawing the button, did it serve any useful purpose, was the stairway so frequently traveled that one was liable to trip on the button and fall to the tile floor, was it so insignificant as to be immaterial, or was it protruding enough to trip a guest if she struck it. These queries provoke presumptions or deductions on which men could differ and certainly were sufficient to evoke the judgment of a jury. [e.s.]
I do not believe the acceptance of my view would require, as the court seems to think, that county employees inspect our streets on their hands and knees to protect it from liability. It would only mean that a jury  and not the majority  would determine if the defect which was big enough to injure Ms. Grier was also big enough to be noticed for the over two years it was there to be seen.
NOTES
[1] The claims against the other defendants are not involved in this appeal.
[2] Bechamps is one of the other defendants sued by plaintiff.
[3] The particular intersection where plaintiff's fall occurred lies within the City of Miami, but the road is a Dade County responsibility.
[4] We must respectfully disagree with the position of the dissent and its reliance on Handel v. Rudnick, 78 So.2d 709 (Fla. 1955). In Handel the plaintiff fell on a stairway inside a hotel, when she "caught her heel on a button protruding from one of the steps."

Id. at 710. The court said:
The evidence conclusively shows that the carpet covering the tile steps was removed in 1938, that the buttons which held it in place were left in the steps where they have remained and that the button on which appellee tripped protruded as much as the thickness of a silver dollar. Defendant had been operating the hotel nine months when the plaintiff was injured. The button had been in the steps for many years and during the period of defendant's lease the employees swept the stairs once or twice daily so there was no question that defendant was on knowledge of the defect.
78 So.2d at 710 (emphasis added). Handel thus involved an indoor hotel staircase, not a city street. The hotel employees literally swept the buttons themselves as often as twice a day for nine months. The defendant was clearly on notice of the defect which existed. No comparable facts exist in the case now before us.
[1] The majority decision in this case, which was prepared by the dissenter in Kopf, bears witness to the concern of the Kopf opinion, which was prepared by the dissenter in this one, that Florida street and sidewalk liability might be in jeopardy. See Kopf at note 1. Putting Judge Cope's two opinions together would mean that either a condition is too open and obvious or too insignificant to justify liability. The accuracy  and the irony  of this observation is heightened by the position taken by the county in its answer brief in this very case. Aside from arguing that the county did not owe a duty of reasonable care to the plaintiff  a position which was the sole basis of the trial judge's ruling below but which the majority correctly rejects  the brief contends that there was no liability in this case because the condition was an "open and obvious" one which the plaintiff had a duty to avoid. The majority, however, has ruled for the county on the basis of the directly opposite conclusion that it was so obscure, as a matter of law, that no one could find it. Apparently, pardon the expression, not only was the defect either too big or too little, it was both.
[2] While I fully agree, it is hard to detect the relevance of this holding to the present controversy. It may well be, in fact, that certain modern innovations, such as paving and the truck, have rendered the salutary doctrine of Coles somewhat obsolete.