# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————————

No. 1D2022-1365

———————————————————

NICOLE MORRIS,

    Appellant,

    v.

CAPITAL CITY BANK,

    Appellee.

———————————————————

On appeal from the Circuit Court for Taylor County.
Gregory S. Parker, Judge.

February 5, 2025

TANENBAUM, J.

Nicole Morris came onto Capital City Bank's premises after business hours to use its 24-hour drive-through automated teller machine ("ATM"). The ATM was designed to be accessed by customers while operating motorized vehicles; it was not a walk-up ATM, so there were no sidewalks or pedestrian pathways leading to it. Morris, however, feared her sport utility vehicle ("SUV") was too large for the roadway lane provided for vehicular traffic at the ATM, so she parked her SUV and walked up to the ATM. As she approached the ATM from the drive-through roadway, Morris slipped, supposedly on an oil slick; she fell and claimed to have suffered injury as a result. Morris then sued in premises liability, contending that the bank breached its duty to maintain its grounds in a reasonably safe condition.

The trial court granted summary judgment in favor of the bank. Both parties had focused on the operation of section 768.0755(1), Florida Statutes. That provision states as follows:

> (1)   If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:

> (a)   The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or

> (b)   The condition occurred with regularity and was therefore foreseeable.

§ 768.0755(1), Fla. Stat.

The bank argued, in part, that Morris was not an invitee—at least regarding her use of the drive-up ATM as a pedestrian—so it did not owe her a duty to maintain a roadway leading up to the ATM that was safe to those using it on foot. The trial court rejected this argument; but it granted summary judgment nevertheless, concluding Morris failed to come forward with evidence to establish a genuine issue of fact material to the question of whether the bank had knowledge of the oil hazard—as required under the statutory provision quoted above.

Whether the trial court properly granted summary judgment of course is a question of law that we review *de novo*. Moreover, we can affirm on any legal ground supported by the record. *See In re Yohn's Estate*, 238 So. 2d 290, 295 (Fla. 1970) ("[I]f the lower court assigns an erroneous reason for its decision the decision will be affirmed where there is some other different reason or basis to support it."); *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 644 (Fla. 1999) (same); *cf. Chase v. Cowart*, 102 So. 2d 147, 150 (Fla. 1958) (explaining that an appellate court is "required to uphold the lower court if valid grounds exist therefor," so

2

regardless of whether the trial court "traveled the proper route, used proper reasoning, or laid his conclusion on proper grounds," the question for the appellate court is "whether [the trial court's] conclusion is correct or incorrect"). That is what we do here.

While the parties focused on subsection one of section 768.0755, the operative provision is in subsection two, which makes clear the statute "does not affect any common-law duty of care owed by a person or entity in possession or control of a business premises." § 768.0755(2), Fla. Stat. The existence of a duty of care is a legal question, not a factual one, duty being "the standard of conduct given to the jury for gauging the defendant's factual conduct." *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992). "An action for negligence is predicated upon the existence of a legal duty owed by the defendant to protect the plaintiff from an unreasonable risk of harm," and "[t]he extent of the defendant's duty is circumscribed by the scope of the anticipated risks to which the defendant exposes others." *Stevens v. Jefferson*, 436 So. 2d 33, 35 (Fla. 1983) (internal quotations and citation omitted). "At the core of the duty element is the requirement that each defendant who creates a risk must exercise prudent foresight whenever others may be injured as a result of the risk"; and "[a]*s to duty,* the proper inquiry for the reviewing court is whether the defendant's conduct created a foreseeable zone of risk." *Moultrie v. Consol. Stores Intern. Corp.*, 764 So. 2d 637, 639 (Fla. 1st DCA 2000). Summary judgment for the bank was the correct disposition on this record because, as a matter of law, it did not owe Morris the duty of care that she claimed—there being no *foreseeable* zone of risk, regarding pedestrians, created around the drive-through ATM.

A landowner's duty toward those on its land varies depending on that person's status while there. *See Post v. Lunney*, 261 So. 2d 146, 147 (Fla. 1972) ("Visitors upon the private property of others fall within one of three classifications: they are either trespassers, licensees, or invitees."). Those duties, based on the classifications just referenced, are as follows:

> [A landowner] must not wilfully and wantonly injure a trespasser; he must not wilfully and wantonly injure a licensee, or intentionally expose him to danger; and,

3

where the visitor is an invitee, he must keep his property reasonably safe and protect the visitor from dangers of which he is, or should be aware.

*Id.* "Florida's invitee test is known as the 'mutual benefit test' or the 'economic benefit test,'" under which "the determinative question is: [w]hether the injured person, at the time of the injury, had present business relations with the owner of the premises which would render his presence of mutual aid to both." *Id.* at 148 (internal quotations and citation omitted). There is no doubt, then, that Morris was an invitee, as she was one who "enter[ed] upon the premises of another for purposes connected with the business of the owner or occupant of the premises." *Id.* at 147–48. She was a bank customer, and the bank offered the ATM as a convenience, so customers could access money held by the bank outside business hours.

Still, the bank's duty to maintain a safe premises for invitees like Morris is limited to the intended use of the premises as part of the invitation. *See Dramstadt v. City of W. Palm Beach*, 81 So. 2d 484, 485 (Fla. 1955) (approving doctrine that "[o]wners or holders of premises are not required to place warning signals on property where the public is not expected to go"—and do not owe a duty of care—to pedestrians in an area not intended "to be used as a walkway"; noting that those pedestrians "use such areas . . . at their own risk"). This duty owed to business invitees

> extends to all portions of the premises which are included within the invitation and which it is necessary or convenient for the invitee to visit or use in the course of the business *for which the invitation was extended*, and at which his presence should therefore reasonably be anticipated, or *to which he is allowed to go*.

*Hall v. Holland*, 47 So. 2d 889, 892 (Fla. 1950) (emphases supplied) (internal quotation and citation omitted).

The extent of a business owner's duty to its invitees depends on the nature of the business to be conducted on the premises—a more extensive duty being imposed on those owners who invite large numbers of patrons to engage in more dangerous recreational activities, a less extensive duty for those engaged in more

4

traditional commercial activity. *Cf. Wells v. Palm Beach Kennel Club*, 35 So. 2d 720, 721 (Fla. 1948) (explaining that "[p]laces of amusement where large crowds congregate are required to keep their premises in reasonably safe condition commensurate with the business conducted" and noting that while the owners of race tracks are not "insurers of the safety of their patrons," they do owe "a higher degree of diligence than it does when applied to a store, bank or such like place of business"); *Brightwell v. Beem*, 90 So. 2d 320, 322 (Fla. 1956) (explaining that the owner of a place of amusement "is not an insurer of the safety of his patrons, but he must exercise ordinary and reasonable care and prudence to have and maintain his place and all appliances *intended for the use of patrons* in a reasonably safe condition *for all ordinary, customary, and reasonable uses to which they may be put by patrons*" (emphases supplied) (internal quotation and citation omitted)).

The bank provided a roadway so that its customers could access the ATM by vehicle, and its duty was to maintain that roadway as "reasonably safe for use," but only "for the kind of traffic intended for it." *City of Tallahassee v. Coles*, 4 So. 2d 874, 875–76 (Fla. 1941); *see id.* at 876 (noting that "sidewalks and crosswalks devoted to the use of pedestrians would require greater care and attention than the remainder of the street given over to the passage of vehicles"); *cf. Turlington v. Tampa Elec. Co.*, 56 So. 696, 698 (Fla. 1911) ("Where one undertakes to render a service by furnishing accommodations of a public nature, the law imposes a duty to use proper care, precaution, and diligence in providing and maintaining the accommodations in a reasonably safe condition *for the purposes to which they are adapted* and are *apparently designed to be used*." (emphases supplied)); *Jackson v. Pike,* 87 So. 2d 410, 411 (Fla. 1956) (noting "[t]he general rule of the measure of duty resting on the owners of parking lots is that the owners or operators, extending an express or implied invitation to the public to use the facilities provided, are under a duty to those taking advantage of the invitation, to use reasonable care to see that the premises are in reasonably safe condition for the intended use"); *Schweikert v. Palm Beach Speedway, Inc.*, 100 So. 2d 804, 805 (Fla. 1958) (explaining, with reference to stadiums, that "it is now settled law in this state that the duty of the proprietor of a place of amusement to keep his premises and appliances reasonably safe for use by his patrons extends not only to the ordinary use for

which they were intended but also to the customary use made of them by the patrons with the knowledge of the proprietor"); *Stevens*, 436 So. 2d at 34 ("The proprietor of a place of public entertainment owes his invitee a duty to use due care to maintain his premises in a reasonably safe condition commensurate with the activities conducted thereon.").

The record here reveals that the intended use of the drive-through ATM—along with the roadway leading to it—was for access by customers operating their vehicles. Morris did not present evidence that pointed to any other intended use. Of course, there were no walkways leading to the ATM, and nothing else to suggest that the bank intended for pedestrians to access the drive-through ATM. The bank's implicit invitation to Morris for her to come onto its premises after hours necessarily was limited to access to that ATM while she remained in her vehicle. There was no invitation to access the ATM in any other way. The bank's duty, in turn, was limited to keeping that area safe only for motor vehicle traffic, not for pedestrian traffic. Morris's deviation from this intended use, without the bank's knowledge, could not operate to expand the scope of its duty in this respect.

The bank was "entitled to assume [Morris would] perceive that which would be obvious to [her] through the normal use of [her] senses"—the danger of walking in a roadway at night to access a drive-through ATM—so it was "not required to give [her] notice or warning of [this] obvious danger." *See Moultrie*, 764 So. 2d at 639. Nor did the bank have a "duty to make the [area] safe for walking, a function for which it was not designed." *City of Melbourne v. Dunn*, 841 So. 2d 504, 505 (Fla. 5th DCA 2003) ("The city had no reason to suspect that a grown woman would consider the planter an exit path, or use it to perform a sort of tightrope act, instead of proceeding to the parking lot by simply walking around it along the adjacent path."); *accord Dampier v. Morgan Tire & Auto, LLC*, 82 So. 3d 204, 206 (Fla. 5th DCA 2012) (citing cases for proposition that "a landowner has no liability for falls which occur when invitees walk on surfaces not designed for walking"). As the supreme court has explained more generally,

> Not every injury from an accident gives to the injured party a cause of action for the negligence of someone else.

6

The owner of property is not an insurer of the safety of everyone who comes upon the property under all circumstances. The owner of the property or the one having control of the property was not required to maintain it in such a condition that an accident could not possibly happen. Any person going upon such property, under the undisputed facts and circumstances disclosed by this record, was obligated to exercise a reasonable degree of care for his own safety.

*Night Racing Ass'n v. Green*, 71 So. 2d 500, 503 (Fla. 1954).

Section 768.0755, by its own terms, does not create any duty of care. And at common law, the bank owed no duty to Morris regarding her access to the ATM as a pedestrian, as explained above. She proceeded at her own risk, and the law does not expect the bank to be the insurer for an accidental injury she suffers when she engages in an unintended use of the premises—a use exceeding the scope of the bank's invitation to her. There being no duty, there also could be no breach and no cause of action for negligence as pleaded by Morris. The bank was entitled to dismissal of the suit with prejudice, which the summary judgment here on review effected.

AFFIRMED.

NORDBY and LONG, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Jonathan Anthony Martin and Courtney Rebecca Brewer, Tallahassee; and John S. Mills, Jacksonville; of Bishop & Mills, PLLC, for Appellant.

Megan Gisclar Colter and Thomas A. Valdez, Tampa; and William Grubbs and Christopher Hastings, Tallahassee; of Quintairos, Prieto, Wood & Boyer, P.A., for Appellee.

7