# Third District Court of Appeal

## State of Florida

Opinion filed July 12, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-824
Lower Tribunal No. 20-10025
_____

**Ifrain Benitez,**
Appellant,

vs.

**Lawson Industries, Inc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Oscar Rodriguez-Fonts, Judge.

Robert L. Gardana, P.A., and Robert L. Gardana; and Philip D. Parrish, P.A., and Philip D. Parrish, for appellant.

Moyer Law Group, and Kellie A. Caggiano, Tyler R. Bennion and Randell H. Rowe (St. Petersburg), for appellee.

Before FERNANDEZ, HENDON and LOBREE, JJ.

HENDON, J.

In this personal injury action, appellant Ifrain Benitez appeals entry of final summary judgment in favor of the defendant below, appellee Lawson Industries, Inc. ("Lawson"). Benitez sustained injuries when he attempted to unload a shipment of heavy impact windows and doors that were delivered by Lawson's employee and placed on Benitez's employer's forklift. The impact doors toppled off the forklift and onto Benitez when he removed the windows that were leaning against the impact doors. We affirm.

Lawson is a Miami-Dade impact window and door manufacturer. PMYY Leon Corporation, Inc. ("PMYY") is Benitez's employer and a local retailer in Hialeah that ordered impact windows and doors from Lawson. The impact doors and windows had been offloaded onto PMYY's forklift the previous day by Lawson's delivery truck driver, a Lawson employee, Mr. Radu ("Radu"). On the delivery day, PMYY's principal, Yohander Leon ("Leon"), assisted Radu in moving the shipment from the delivery truck onto a PMYY forklift outfitted with a special pallet rack to accommodate the windows and doors. Radu stated in a deposition that, after transferring the shipment from the delivery truck to the PMYY forklift rack, he did not recall strapping the doors onto the forklift rack because that was not his job. He

2

did not recall whether or not the person on the forklift (Leon) strapped the load down, but testified that this was PMYY's usual practice. After making the delivery, the driver left the PMYY premises. Leon stated in his deposition that it was his usual practice to securely strap the doors and windows to the forklift rack, and that he strapped the shipment to the pallet rack on the forklift. Once the shipment had been transferred to the forklift and the driver had left, Leon stated that he drove the forklift into the PMYY warehouse for storage overnight.

Benitez testified at his deposition that on the morning following the shipment delivery date, he entered the warehouse and began to unload the shipment from the forklift by himself, and at that time observed that there were no straps in place. Later, Benitez testified that he did not realize no safety strapping was in place until after the doors fell on him. Benitez stated that once he had unloaded the lighter windows from the front of the heavier impact doors, the doors, which were stacked upright rather than on their sides, fell forward onto him causing him injuries. Benitez filed suit against Lawson asserting one count of negligence, asserting that Lawson improperly loaded the shipment onto PMYY's forklift, which ultimately led to Benitez's injuries.

3

Following a hearing, the trial court granted Lawson's motion for summary judgment. The evidence before the court at the hearing on the motion for summary judgment indicated that PMYY's owner, Leon, stated several times that he strapped the shipment to the forklift once the Lawson employee had offloaded the shipment. The record provides that Benitez stated that, although he observed that the shipment was not strapped to the forklift, he proceeded to offload the shipment by himself in contravention of PMYY's policy that two persons are required for offloading a heavy shipment. PMYY's counsel admitted at the summary judgment hearing that the only testimony that the shipment was strapped to the forklift came from Leon, who accepted the shipment from Lawson's employee. Lawson's former shipping manager and corporate representative, Jose Vidal, stated that it is standard operating procedure that a shipment being moved is strapped down by the customer or by the party doing the transporting. In this case, Vidal indicated that Lawson secures the shipment for delivery, and once the shipment is delivered, the shipment becomes the customer's responsibility.

The trial court granted Lawson's motion for summary judgment, determining as a matter of law that Lawson had no duty to Benitez, and that PMYY was responsible for strapping the shipment to the forklift once

4

the shipment had been offloaded. Further, the court noted that Benitez undertook to unload the forklift by himself despite observing the lack of safety straps. Benitez appealed.

Our standard of review of a final summary judgment is de novo. Najeera v. Tropical Supermarket Corp., 305 So. 3d 639 (Fla. 3d DCA 2020) (citing Markowitz v. Helen Homes of Kendall Corp., 826 So. 2d 256, 259 (Fla. 2002)).

Analysis

Florida Rule of Civil Procedure 1.510[1] provides that the test for the existence of a genuine factual dispute is whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and "whether the evidence presents a sufficient disagreement to require submission to a jury." See In re Amends. to Fla. R. Civ. P. 1.510, 317 So. 3d 72, 74 (Fla. 2021) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)). Under this standard, "[t]he substantive evidentiary burden of proof that the respective parties must meet at trial is the only

---

[1] The Florida Supreme Court recently amended Rule 1.510 and adopted the federal summary judgment standard laid out in Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). The Rule's effective date was May 1, 2021, and governs the adjudication of any motions decided on or after this date. See In re Amends. to Fla. R. Civ. P. 1.510, 317 So. 3d 72, 77 (Fla. 2021). As the summary judgment at issue in this this case was decided in May 2022, it is properly before the Court under the new summary judgment standard.

touchstone that accurately measures whether a genuine issue of material fact exists to be tried." Id. (citations omitted).

We conclude that the absence of a material issue of fact is established by this record. There is no evidence in the record that Lawson's driver strapped or failed to strap the shipment to PMYY's forklift once he transferred the shipment from the delivery truck. Having made many deliveries to PMYY, Radu testified it was not his responsibility to do so once the shipment was offloaded to the customer. Leon, on the other hand, affirmatively testified that he strapped the shipment to his forklift after the driver transferred the shipment and left the premises. We agree with the trial court that, as to Lawson, the "plaintiff cannot show a genuine dispute as required by Fla. R. Civ. P. 1.510."

Proof that there is no genuine dispute of a material issue of fact is not the only prerequisite to obtaining an order granting a motion for summary judgment. The court must also conclude that the moving party is entitled to a judgment as a matter of law. Fla. R. Civ. P. 1.510(a). If the moving party has failed to show an entitlement to a judgment as a matter of law it makes no difference whether the moving party has succeeded in showing there is no dispute of a material fact. § 14:2. Summary Judgment, 5 Fla. Prac., Civil Practice § 14:2 (2023 ed.) (citations omitted). In this case, the

6

determination of the existence of a duty of care in a negligence action is the threshold question of law. See McCain v. Fla. Power Corp., 593 So. 2d 500, 502 (Fla.1992).

"The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." Id. at 502. "Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." McCain v. Fla. Power Corp., 593 So. 2d 500, 503 (Fla. 1992); Smith v. Fla. Power & Light Co., 857 So. 2d 224, 230 (Fla. 2d DCA 2003).

A duty may arise from multiple sources: "(1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." Clay Elec. Co-op., Inc. v. Johnson, 873 So. 2d 1182, 1185 (Fla. 2003) (quoting McCain, 593 So. 2d at 503 n.2). The present case falls into the fourth category: the duty, if it exists, would arise from the general facts of the case. Goldberg v. Fla. Power & Light Co., 899 So. 2d 1105, 1110 (Fla. 2005); Limones v. Sch. Dist. of Lee Cnty., 161 So. 3d 384, 389 (Fla. 2015).

7

We conclude from this record that once Lawson placed the shipment onto PMYY's forklift, PMYY became the responsible party. At that point, the shipment, and the duty to implement safety precautions, was in PMYY's sole control, not Lawson's. Leon's record testimony indicates that he strapped the load to the forklift, and then drove the forklift some distance to park it in the warehouse. The plaintiff Benitez's record testimony is contradictory, but in any event, the record shows that Benitez proceeded to unload the shipment by himself, in disregard of any lack of straps or assistance. Any foreseeable "zone of risk" surrounding the forklift and shipment was in PMYY's sole control once the shipment was delivered. Smith, 857 So. 2d at 230 ("The reasonable specific foreseeability of a general zone of risk to a given plaintiff is an objective test . . . that recognizes that more is required than the mere general risk of injury that is concomitant to all human activity.") (internal quotations omitted). Accordingly, we affirm.

Affirmed.