# SIXTH DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

Case No. 6D2023-2448
Lower Tribunal No. 2018-CA-012533

_____

SIERRA ORLANDO PROPERTIES, LTD., d/b/a CARIBE ROYALE RESORT SUITES,

Appellant,

v.

MELISSA ALLEN,

Appellee.

_____

Appeal from the Circuit Court for Orange County.
Kevin B. Weiss and Margaret H. Schreiber, Judges.

August 22, 2025

BROWNLEE, J.

Sierra Orlando Properties, Ltd., d/b/a Caribe Royale Resort Suites ("Caribe Royale") appeals the final judgment in favor of Melissa Allen following her fall in Caribe Royale's parking lot. We have jurisdiction. *See* Fla. R. App. P. 9.030(b)(1)(A). Caribe Royale raises several issues on appeal, but we find the improper denial of Caribe Royale's motion for directed verdict dispositive and, therefore, reverse on that point only.

### Relevant Factual Background

Allen and her daughter visited Caribe Royale's property to attend a Future Farmers of America Convention. When they arrived, Allen parked her truck in the paved parking lot, which contained landscaped medians separating the rows of parking spaces. There was also a paved sidewalk, which ran adjacent to the parking lot and led to the building.

After Allen parked, her daughter grabbed her large rolling suitcase and proceeded through the parking lot with her friend. But Allen went a different way. She picked up two grocery bags filled with snacks and began to walk, with others in her group, through one of the grassy medians in the parking lot. The median was unpaved and bordered by a raised curb. It contained shrubbery, some grass, and an oak tree.[1] Although the sidewalk was about two parking spaces away, Allen chose to cross the grassy median because it was the route "closest" to her truck. Upon entering the median, Allen stepped on the unstable lid of an irrigation box, which flipped up, causing her leg to fall into the hole where the irrigation equipment was stored. There were no signs cautioning people not to walk there.

Allen sued Caribe Royale for the injuries she sustained in the fall. She claimed Caribe Royale negligently failed to maintain or adequately inspect or warn her of the danger located in the grassy median. Throughout the litigation, Caribe Royale

---

[1] Both parties referred to this as the "grassy median" throughout trial.

argued it owed Allen no duty of care relating to the grassy median because that area was not intended for pedestrian use. It ultimately moved for directed verdict on this basis. Allen responded that Caribe Royale was "on notice" that pedestrians regularly traverse the median and, therefore, it owed her a duty of care.

As to notice, Allen and her daughter testified the grass on the median was worn down and it looked like other people had walked there. In addition, the head of security for Caribe Royale testified she was "pretty sure" some people had walked there "even though there's a sidewalk." Allen's counsel then attempted to impeach the security guard's testimony by reading a portion of her deposition transcript when she was asked whether people had walked through the landscaped areas. Similar to her trial testimony, the head of security replied during her deposition that she was "pretty sure people do." Allen's counsel also asked her during the deposition whether the grassy median was "like a worn-out path," but she answered only that "[s]ome people do walk [sic] even though there's a sidewalk."

The trial court denied Caribe Royale's motion, and the jury returned a verdict in Allen's favor. Caribe Royale renewed its motion for directed verdict after trial and again maintained it owed Allen no duty of care relating to the grassy median, in part, because there was no evidence that it designed, intended, or encouraged the grassy median to be used by pedestrians. The trial court again denied the motion. Caribe Royale now appeals the final judgment.

3

### *The Standard*

We review the denial of a motion for directed verdict de novo. *Hannah v. Malk Holdings, LLC*, 368 So. 3d 1087, 1090 (Fla. 6th DCA 2023) (citing *Christensen v. Bowen*, 140 So. 3d 498, 501 (Fla. 2014)). And we have said that "directed verdicts in negligence cases are rarely appropriate." *Lancheros v. Burke*, 375 So. 3d 927, 929 (Fla. 6th DCA 2023), *review dismissed*, No. SC2023-1137, 2023 WL 8277908 (Fla. Nov. 30, 2023). Whether a duty exists in a negligence case, however, is a matter of law and is, therefore, not a question for the jury to decide. *See McCain v. Fla. Power Corp.*, 593 So. 2d 500, 504 (Fla. 1992). Rather, duty is "the standard of conduct given to the jury for gauging the defendant's factual conduct." *Id.*

### *The Element of Duty*

"[T]o succeed on a claim of negligence, a plaintiff must establish the four elements of duty, breach, proximate causation, and damages." *Limones v. Sch. Dist. of Lee Cnty.*, 161 So. 3d 384, 389 (Fla. 2015) (citing *Unites States v. Stevens*, 994 So. 2d 1062, 1065–66 (Fla. 2008)).[2] In *McCain*, the Florida Supreme Court restated the law of negligence and set forth general principles concerning the element of duty. *See Smith v. Fla. Power and Light Co.*, 857 So. 2d 224, 229 (Fla. 2d DCA 2003)

---

[2] Of these, only duty is a legal question for the court, and the remaining elements are to be resolved by the finder of fact. *Id*.

(citing *McCain*, 593 So. 2d at 500). It explained, "a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others."[3] *McCain*, 593 So. 2d at 503. The *McCain* court described "reasonable, general foresight" as the core of the duty element and instructed that the focus is "whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others."[4] *Id*. Thus, under *McCain's* framework, "the zone of risk created by a defendant defines the scope of the defendant's legal duty and the scope of the zone of risk is in turn determined by the foreseeability of a risk of harm

---

[3] Florida law recognizes four sources of duty: "(1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." *McCain*, 593 So. 2d at 503 n.2 (citing Restatement (Second) of Torts § 285 (1965)).

[4] *McCain* clarified that, in addition to being central to the element of duty, foreseeability is also relevant to proximate cause, but relates to that element "in [a] different way[] and to [a] different end[]." 593 So. 2d at 502. Unlike the legal question of whether the defendant's conduct foreseeably created a broader zone of risk, thereby giving rise to a duty, foreseeability under the proximate cause element begs the factual question of "whether the *specific* injury was generally foreseeable." *Id*. at 504 (emphasis added). The court cautioned that the distinctions between these two aspects of foreseeability should not be overlooked:

> The temptation therefore is to merge the two elements into a single hybrid "foreseeability" analysis, or to otherwise blur the distinctions between them. A review of both precedent and public policy convinces us that such blurring would be incorrect, even though it often will yield the correct result.

*Id*.

to others." *Smith*, 857 So. 2d at 229. And the duty then placed upon the defendant is to either lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses. *Id.* (quotation omitted).

At the time it was written, *McCain*'s analytical framework was not new. It was based on the fundamental principles announced in *Palsgraf v. Long Island Railroad*, 248 N.Y. 339, 162 N.E. 99 (1928),[5] which recognized duty as a "relational concept." *See Smith*, 857 So. 2d at 230. As then-Judge Canady described it, "[a] duty is owed by a particular defendant to a particular plaintiff based on particular circumstances." *Id.* at 230 (citing *Gath v. St. Lucie Cnty.—Fort Pierce Fire Dist.*, 640 So. 2d 138, 140 (Fla. 4th DCA 1994) (Anstead, J., concurring) ("The 'reasonable specific foreseeability of a general zone of risk to a given [p]laintiff is

---

[5] *Smith* explained that the following fundamental principles were announced in *Palsgraf* and relied on in *McCain*:

> [T]he orbit of the danger as disclosed to the eye of reasonable vigilance would be the orbit of the duty. . . .
>
> The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension. . . .
>
> One who seeks redress at law . . . must show that the act as to him had possibilities of danger so many and apparent as to entitle him to be protected against the doing of it . . . .

*Smith*, 857 So. 2d at 230 (quoting *Palsgraf*, 162 N.E. at 100–01).

an objective test . . . that recognizes that more is required than the mere general risk of injury that is concomitant to all human activity.'")).

As an initial matter, the particular duty that Caribe Royale owed Allen under the particular circumstances of this case depends on what sort of visitor she was. "Visitors upon the private property of others fall within one of three classifications: they are either trespassers, licensees, or invitees." *Post v. Lunney*, 261 So. 2d 146, 147 (Fla. 1972). The parties here agree Allen was an invitee when she entered Caribe Royale's property.[6]

Property owners, like Caribe Royale, generally owe two duties of care to an invitee, like Allen: "(1) the duty to use reasonable care in maintaining the property in a reasonably safe condition, and; (2) the duty to warn of latent or concealed dangers which are or should be known to the owner and which are unknown to the invitee and cannot be discovered through the exercise of due care." *Pozanco v. FJB 6501, Inc.*, 346 So. 3d 120, 123 (Fla. 3d DCA 2022) (quoting *Grimes v. Fam. Dollar Stores of Fla.*, 194 So. 3d 424, 427 (Fla. 3d DCA 2016)).

But, as explained above, the scope of a landowner's duty is not boundless. *See Night Racing Ass'n v. Green*, 71 So. 2d 500, 503 (Fla. 1954) ("Not every injury from an accident gives to the injured party a cause of action for the negligence of someone

---

[6] An "invitee is one 'who enters upon the premises of another for purposes connected with the business of the owner or occupant of the premises.'" *Post*, 261 So. 2d at 147–48.

else. The owner of property is not an insurer of the safety of everyone who comes upon the property under all circumstances."). It is circumscribed:

> This duty owed to business invitees "extends to all portions of the premises *which are included within the invitation* and which it is necessary or convenient for the invitee to visit or use in the course of the business for which the invitation was extended, and at which his presence should therefore reasonably be anticipated, or *to which he is allowed to go*."

*Morris v. Cap. City Bank*, 403 So. 3d 369, 373 (Fla. 1st DCA 2025) (first emphasis added, additional emphasis removed) (quoting *Hall v. Holland*, 47 So. 2d 889, 892 (Fla. 1950)). In accordance with that principle, Florida law has long held there is simply no duty of care owed to pedestrians walking in an area not intended "to be used as a walkway," and pedestrians "use such areas . . . at their own risk." *Id.* (quoting *Dramstadt v. City of W. Palm Beach*, 81 So. 2d 484, 485 (Fla. 1955)).

In *Dramstadt*, the plaintiff exited an automobile, stepped on a grass strip of parkway inside a curb—which she alleged was lawfully used by pedestrians—and tripped and fell over a water meter box protruding above ground. 81 So. 2d at 484–85. The trial court granted summary judgment for the defense because the area where the water meter box was placed was not intended for pedestrian use. *Id.* at 485. Consequently, the plaintiff could not recover damages. *Id.*

The Florida Supreme Court affirmed. It noted the plaintiff proceeded at night along the parkway where pedestrians were not supposed to go, there was no walkway, and the plaintiff was using the parkway as a shortcut. *Id.* at 485. The court

8

held, "[u]nder such ci[r]cumstances this court has approved the doctrine that the city is not liable, that those who use such areas do so at their own risk. *Owners or holders of premises are not required to place warning signals on property where the public is not expected to go*." *Id.* (emphasis added).

More recent cases have reiterated the rule that a landowner owes no duty of care to pedestrians who walk in areas not intended for pedestrian use. *See, e.g.*, *TruGreen LandCare, LLC v. LaCapra*, 254 So. 3d 628, 632 (Fla. 5th DCA 2018) (collecting cases):

> [T]here is no duty to make areas that are not designed for walking reasonably safe for that purpose or to warn that they are not safe for walking. *See Dampier* [*v. Morgan Tire & Auto, LLC*], 82 So. 3d [204,] 208 [(Fla. 5th DCA 2012)] (finding no duty to warn or make a planter bed with a stump that plaintiff tripped on reasonably safe for walking); *City of Melbourne v. Dunn*, 841 So. 2d 504, 505 (Fla. 5th DCA 2003) (determining there was no duty to make raised timbers alongside a large planter bed safe for walking or to warn of danger as it was not foreseeable they would be used for walking (citing *McCain v. Fla. Power Corp.*, 593 So. 2d 500 (Fla. 1992))); *Taylor v. Univ. City Prop. Mgmt.*, 779 So. 2d 621 (Fla. 5th DCA 2001) (holding that plaintiff, who was injured when she stepped on metal-rim edge of palm tree planter square that was six feet in diameter with palm tree and shrub-like foliage around base of palm tree, could not recover because hazard was obvious and not inherently dangerous); *Prager v. Marks Bros. Co.*, 483 So. 2d 881 (Fla. 3d DCA 1986) (finding unfinished curbside flowerbox in which plaintiff slipped on dirt while walking was not dangerous condition necessitating warning).

In *TruGreen*, the plaintiff tripped and injured himself while walking through a palm tree planter square, and he sued TruGreen for negligently maintaining, landscaping, and inspecting the square. *TruGreen*, 254 So. 3d at 630. A jury found

9

both TruGreen and the plaintiff negligent, and TruGreen challenged the denial of its motion for directed verdict on appeal. *Id.* TruGreen argued it owed the plaintiff no duty to keep the landscaped areas in safe condition or to warn of any dangerous conditions because such areas are not dangerous as a matter of law and the change in surface area was open and obvious. *Id.* It noted the plaintiff chose to bypass the sidewalk, which was intended for pedestrian use, and he should have known that going through the landscaped area presented a hazard. *Id.* at 630–31.

The Fifth District agreed, found the planter square was not dangerous as a matter of law, and reversed. *Id.* at 633. The court began by recognizing the two duties a landowner owes an invitee and then explained that "some conditions are considered so obvious and not inherently dangerous that they do not, as a matter of law, support liability for the breach of the duty to maintain the premises in a reasonably safe condition." *Id.* at 631. A landscaping feature is such a condition. *Id.* The court then noted a landowner has no duty to make landscaping features safe for walking or to warn that they are not safe for walking. *Id.*

The Fourth District reached a similar conclusion in *Wolf v. Sam's East, Inc.*, 132 So. 3d 305 (Fla. 4th DCA 2014). There, the plaintiff tripped on a tree root and was injured after crossing a landscaped area in a Sam's Club parking lot. *Id.* at 306. Wolf sued Sam's Club for breach of its duty to maintain the premises in a reasonably safe condition and for failing to warn him of the latent danger. *Id.* Wolf testified he

10

was aware there were concrete walkways throughout the landscaped areas, but he decided to cross through the landscaping instead, because it "was a shorter distance from his car to the store entrance." *Id.* Discovery also revealed two other persons had tripped over tree roots in the landscaped areas in the three years before Wolf's accident. *Id.* at 307.

Sam's Club moved for summary judgment, arguing Wolf was solely liable for the accident because he chose to walk through the landscaped area rather than use the pedestrian walkway. *Id.* After the trial court denied its motion for summary judgment, Sam's Club moved for rehearing, relying on *Dampier*, and the trial court granted the motion. *Id.* (citing *Dampier*, 82 So. 3d at 204).

The Fourth District affirmed. *Id.* at 309. It echoed that "[l]andscaping features are generally found not to constitute a dangerous condition as a matter of law" and that "[a] landowner has no liability for falls which occur when invitees walk on surfaces not designed for walking, such as planting beds." *Id.* at 308 (quoting *Dampier*, 82 So. 3d at 206). The court held Sam's Club had no duty to make the landscaping areas safe for pedestrians. *Id.* Finally, the court found it was of no moment that two other people had fallen in the landscaping areas because, at the end of the day, "Wolf fell because he was knowingly cutting through a landscaping area rather than using the concrete walkways designed for that purpose." *Id.* at 309.

Nor did the landowner owe any duty to a pedestrian walking through a landscaped area in *Pio v. Simon Capital GP*, 366 So. 3d 1200 (Fla. 2d DCA 2023). Pio injured herself when she stepped in a concealed depression in a bed of grass located in a raised landscaped area of a parking lot. *Id.* at 1202. In affirming the trial court's summary judgment order finding the defendant owed Pio no duty, the Second District noted Pio admitted she knew of an alternate route to the mall that would not require her to walk in the landscaped area. *Id.* at 1205. The court rejected Pio's argument that it was foreseeable that people would step into the grass area based on the security guard's deposition testimony admitting that people had, on occasion, stepped through the grass to reach the sidewalk. *Id.*

Florida's district courts of appeal, however, have recognized what they deem to be "exceptions" to the rule announced in the foregoing cases. For example, in *Turner v. City of Tallahassee*, 566 So. 2d 871 (Fla. 1st DCA 1990), the First District explained:

> [A] city . . . generally, has no duty of care to maintain grassy strips in swales or parkways. *See Kass v. City of Miami Beach,* 436 So. 2d 1086 (Fla. 3d DCA 1983). Exceptions to these general rules have been made where the injured person was virtually invited to walk in the grass, *City of Pensacola v. Stamm*, 448 So. 2d 39, 41 (Fla. 1st DCA), *petition for review denied,* 456 So. 2d 1181 (Fla.1984), or the person took evasive action to avoid a dangerous condition on a sidewalk and encountered the defective condition in an immediately adjacent ditch, *Warren v. Dep't of Transportation*, 559 So. 2d 387 (Fla. 3d DCA 1990).

*Id.* at 872.

At the outset, we disagree that these cases reveal true "exceptions" to the rule. Instead, the facts of the few cases in Florida that find a duty based on these purported "exceptions" are just different. They include some evidence that the landowner expanded the scope of its invitation to the invitee, thereby creating a duty where one might not have otherwise been. *See Hall*, 47 So. 2d at 892 (noting that the duty owed "extends to all portions of the premises which are included within the invitation and which it is necessary or convenient for the invitee to visit or use in the course of the business for which the invitation was extended, and at which his presence should therefore reasonably be anticipated, or to which he is allowed to go" (quoting *Coffer v. Bradshaw*, 167 S.E. 119, 123 (Ga. Ct. App. 1932))).

Consider *Stamm*. There, the plaintiff attended an arts festival in a public park when she purchased food from a concession stand. 448 So. 2d at 40. The stand was parked in the street, next to the curb, and had a service window facing a grass strip. *Id.* The grass strip was located between a park sidewalk and the adjoining street that was closed for the festival. *Id.* When she left the concession stand, Stamm headed across the grass strip toward a trash container located in the grass, stepped in a concealed hole, and broke her ankle. *Id.* Stamm sued several entities for negligence, including the city, which owned the land, and the jury ultimately found in Stamm's favor. *Id.*

13

The city appealed, arguing it had no duty to maintain the grass strip for public use. *Id.* at 41. But the First District disagreed. *Id.* The court distinguished the numerous cases holding a municipal corporation does not have a duty to maintain grass strips located in swales or parkways, because those cases did not involve a "grass area upon which the injured person was virtually invited to walk. The grass areas in [the other cases] were not intended to be used by pedestrians." *Id.*

*Grimes v. Family Dollar Stores of Florida, Inc*., 194 So. 3d 424 (Fla. 3d DCA 2016), on which Allen relies, is similar. Grimes approached a Family Dollar Store by walking through the parking lot and across one of the landscaped areas directly across from the store. *Id.* at 426. The landscaped area contained grass, dirt, trees, and rebar tree tie-downs, and was bordered by concrete curbs. *Id.* While traversing the landscaped area, Grimes tripped over a piece of rebar, injured her knee, and filed suit. *Id.* She alleged the defendants breached their duty to her by allowing this concealed dangerous condition "in a well-worn path through the landscape area used by business invitees as a shortcut to the Family Dollar Store's entrance." *Id.* The trial court relied on *Wolf* and granted summary judgment in favor of all defendants. *Id.*

But the Third District reversed as to two of the defendants. *Id.* at 427. It first acknowledged the duties a landowner owes an invitee. *Id.* It then explained that the plaintiff must "generally prove that the owner of the premises had actual or constructive notice of the dangerous condition[,]" but constructive notice on this

14

point relates to the element of breach, not duty. *Id.* It then noted there was evidence showing the landscaped area had become "a well-trampled dirt footpath used by invitees" with a trashcan "right next to the trampled footpath area" and explained, "[i]f the parties responsible for maintaining the parking lot and landscaped features *allowed* this particular landscaped area to become a regularly used footpath in the parking lot they controlled, they then may have a duty to anticipate the harm, whether or not the artificial re-bar hazard within that location was open and obvious." *Id.* at 427–28, 427 n.2 (emphasis added) (citation omitted).

Thus, in cases like *Stamm* and *Grimes,* there was evidence that the landowner extended the scope of the invitation to include the landscaped areas by, for example, putting trash cans in the grass. In other words, there was evidence in those cases that the landowners intended for pedestrians to enter the area. Conversely, in *TruGreen*, *Wolf*, and *Pio*, there was no evidence that the defendants invited or allowed the plaintiffs to enter the landscaped areas. There was merely evidence that some invitees had done so.

### *This Case*

As the party who bore the burden of proof at trial, Allen was required to put forth some evidence that Caribe Royale owed her a duty as a pedestrian crossing through the grassy median. *See Williams v. Davis*, 974 So. 2d 1052, 1056 (Fla. 2007) ("The claimant must first demonstrate that the defendant owed a duty, or obligation,

15

recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks.") (internal marks and quotations omitted). Indeed, Caribe Royale's duty to Allen was limited to the "intended use of the premises as part of the invitation." *Morris*, 403 So. 3d at 372. But Allen produced no evidence that Caribe Royale expanded the scope of its invitation to include the grassy median.

In fact, the evidence showed the opposite: the median was not intended for pedestrian use. The evidence showed Allen injured herself when stepping over a curbed barrier and onto the lid of an irrigation box in an unpaved, grassy median. It further showed there was a sidewalk adjacent to the parking lot for pedestrians to use when walking from the parking lot to the building. That sidewalk was two parking spaces away from Allen's car, but, as her daughter explained, Allen chose to negotiate the grassy median, rather than use the sidewalk, because it was closer to her truck.

The fact that there was an adjacent sidewalk cuts against any argument that Caribe Royale intended for pedestrians to access the building by crossing the grassy median. *See Dunn*, 841 So. 2d at 505 ("The city had no reason to suspect that a grown woman would consider the planter an exit path . . . instead of proceeding to the parking lot by simply walking around it along the adjacent path."); *Wolf*, 132 So. 3d at 309 (finding Wolf did not fall in an area intended for walking where "he was

16

knowingly cutting through a landscaping area rather than using the concrete walkways designed for that purpose"); *TruGreen*, 254 So. 3d at 633 ("[T]here was no need for a shortcut path because the planter square was surrounded by sidewalk on all sides."). Likewise, the fact that the grassy median was surrounded by a raised curb demonstrates the area was not intended for pedestrian use. Thus, while it is true, as Allen notes, that there was no sign cautioning pedestrians not to walk through the grassy median, there was also no evidence to suggest Caribe Royale intended for pedestrians to walk there. *See Dramstadt*, 81 So. 2d at 485 ("Owners or holders of premises are not required to place warning signals on property where the public is not expected to go.").

We recognize that the evidence also showed the grass was worn down in the median and that it looked like people had previously walked through it. The evidence on this point came from Allen's daughter, who testified that it looked like other people had walked through the median, and from Allen, who testified the median looked like it was worn down where people had walked before. Additionally, Caribe Royale's head of security was "pretty sure" some people had walked through the grassy median "even though there's a sidewalk." Allen relies on *Grimes* and argues this evidence was sufficient to give rise to a duty of care. It was not.

In the first place, it was not simply the pedestrians' use of the landscaped area or worn-down grass that gave rise to a duty in *Grimes*. The evidence there showed

17

the defendant *allowed* pedestrians to use the landscaped area—it showed a trash can located within a landscaped area that had developed a "well-worn" footpath, demonstrating it was in "continuous and obvious use" as a pedestrian walkway. In other words, it was no longer just a landscaped area. The defendant, through its own actions, facilitated the use of the area as a walkway and signaled its approval to pedestrians. This is similar to the evidence in *Stamm*, which showed the defendant *invited* pedestrians to walk on the grass strip. But there is no such evidence in this case. Allen produced no evidence that Caribe Royale invited or allowed her to enter the median. There was, for example, no trashcan located in the middle of the grass, or any other act on the part of Caribe Royale related to the grassy median. And, notably, there was no evidence that Allen saw the grass in the median was worn down or that she believed the median contained a footpath before she decided to walk through it.

In short, Allen presented no evidence that Caribe Royale created a foreseeable zone of risk regarding the grassy median. [7] *See Morris*, 403 So. 3d at 372 ("[*A*]*s to duty*, the proper inquiry for the reviewing court is whether the defendant's conduct

---

[7] In fairness, the trial judge, who carefully considered Caribe Royale's motion for directed verdict and took it under advisement, likely relied on the language in *TruGreen* and *Pio*, stating there was no evidence in those cases of a well-worn or well-trampled footpath. Caribe Royale's motion presented a difficult question of law and, of course, the trial judge did not have the benefit of our opinion at the time.

created a foreseeable zone of risk." (quoting *Moultrie v. Consol. Stores Int'l Corp.*, 764 So. 2d 637, 639 (Fla. 1st DCA 2000))). Allen simply walked through an area where she was not supposed to go and fell into an irrigation box that was precisely where it should have been. Allen's decision to negotiate the grassy median, rather than use the paved, pedestrian walkway, without Caribe Royale's knowledge, "could not operate to expand the scope of [Caribe Royale's] duty." *See id.* at 374 ("Morris's deviation from this intended use, without the bank's knowledge, could not operate to expand the scope of its duty in this respect."). We therefore conclude, as a matter of law, that Caribe Royale had no duty to provide Allen notice or any warning of the obvious danger of walking through the unpaved, grassy median, nor did it have a duty to make the median safe for walking, "a function for which it was not designed." *See id.* (quoting *Dunn*, 841 So. 2d at 505).

Consequently, we reverse the denial of the motion for directed verdict and remand for the trial court to enter judgment in favor of Caribe Royale.

REVERSED and REMANDED.

TRAVER, C.J., and NARDELLA, J., concur.


Jack R. Reiter and Eric M. Yesner, of GrayRobinson, P.A., Miami, for Appellant.

Brian J. Lee, of Morgan & Morgan, Jacksonville, for Appellee.


NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED